UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

DARIUS RICE, et al.,

        Plaintiffs,

    v.

SHERIFF STEPHEN B. TINSLEY, et al.,

        Defendants.

CIVIL ACTION NO.
1:24-CV-01477-JPB

## ORDER

This matter comes before the Court on Sheriff Stephen B. Tinsley's

("Sheriff Tinsley") Motion to Dismiss [Doc. 18].  The Court finds as follows:

## BACKGROUND

### A. Factual History

Darius Rice ("Rice") and Ashley Jackson ("Jackson") (collectively,

"Plaintiffs") allege that on April 7, 2022, they stopped at a QuickTrip convenience

store located at 1614 Hudson Bridge Road in Henry County, Georgia (the "QT").[1]

[Doc. 12, p. 5].  Plaintiffs claim that, while inside the QT, Rice accidentally

bumped into Defendant April Tinsley ("Ms. Tinsley" and, together with Sheriff

---

[1] These facts are derived from Plaintiffs' Second Amended Complaint which, for the purpose of adjudicating the instant motion, the Court accepts as true and views in the light most favorable to Plaintiffs.  See Johnson v. City of Atlanta, 107 F.4th 1292, 1297 (11th Cir. 2024).

Tinsley, "Defendants") who, unbeknownst to Rice, was a deputy for the Clinch County Sheriff's Office.  Id.  Rice claims that he apologized to Ms. Tinsley after the incident.  Id.  Shortly after this interaction, Plaintiffs allege that Ms. Tinsley exited the QT and falsely told her husband—Sheriff Tinsley—that Rice had groped her buttocks.  Id.  Based on this information, Sheriff Tinsley then got out of his vehicle and placed Rice under arrest.  Id.  After handcuffing Rice's arms behind his back, and although Plaintiffs claim that Rice did not resist the arrest, Sherriff Tinsley "body slammed Rice onto the ground causing Rice to lose consciousness." Id.

Plaintiffs also submitted surveillance footage taken from outside the QT on the night of the incident (the "QT Footage").[2]  See [Doc. 12-1].  The QT Footage, which is approximately ten seconds in length, depicts a man and a woman (Sheriff Tinsley and, presumably, Ms. Tinsley) handcuffing another man (Rice) on the

---

[2] "In resolving a motion to dismiss under Rule 12(b)(6), the court generally limits itself to a consideration of the pleadings and exhibits attached thereto."  Kinsey v. MLH Fin. Servs., Inc., 509 F. App'x 852, 853 (11th Cir. 2013).  The Court finds that it can properly review the QT Footage in deciding the instant motion because Plaintiffs attached the QT Footage to their Second Amended Complaint.  See [Doc. 12-1].  In reviewing video footage at the motion to dismiss stage, courts must "construe all ambiguities in the video footage in favor of the plaintiff."  Jackson v. City of Atlanta, 97 F.4th 1343, 1350 (11th Cir. 2024) (quoting Baker v. City of Madison, 67 F.4th 1268, 1277 (11th Cir. 2023)).  However, "if the allegations of the complaint about a particular exhibit conflict with the contents of the exhibit itself, the exhibit controls."  Hoefling v. City of Miami, 811 F.3d 1271, 1277 (11th Cir. 2016).

sidewalk area situated between the storefront of the QT and a car, which appears to be parked and running.  Id.  After a few seconds, the QT footage shows Sheriff Tinsley taking Rice to the ground.  Id.  Approximately the same time as the takedown, the QT Footage displays an individual beginning to exit the parked car from the driver's side door in front of Rice and Defendants and another, unknown individual running toward the group from the left side of the frame.  Id.  Sometime after Sheriff Tinsley arrested Rice, Jackson also approached Defendants and Rice and asked Defendants what they were doing.  [Doc. 12, p. 6].

After the arrest, Defendants called backup to the QT.  Id. at 7.  Plaintiffs allege that the backup law enforcement officers reviewed camera footage from inside the QT and "concluded that it look[ed] as if Mr. Rice accidentally bumped into Ms. Tinsley" and then apologized.  Id.  Nevertheless, the Henry County Sheriff's Office took over the case and charged Rice with sexual battery.  Id. at 8.  Plaintiffs claim that "[a]s a direct and proximate result of the wrongful conduct of each of the Defendants, the Plaintiffs were substantially injured."  Id. at 9.

### B. Procedural History

Plaintiffs filed their Second Amended Complaint (the "Operative Complaint") on July 9, 2024, stating claims against Defendants relating to the April 7, 2022

25

incident at the QT.[3]  [Doc. 12].  In the Operative Complaint, Rice[4] alleged claims for excessive force (Count I) and assault and battery (Count II) against Sheriff Tinsley in his individual capacity.[5]  Id. at 10–15.  Sheriff Tinsley filed a Motion to Dismiss on July 23, 2024, in response to Plaintiffs' Operative Complaint.  [Doc. 18].  Sheriff Tinsley's Motion to Dismiss is now ripe for review.

---

[3] Plaintiffs filed their Original Complaint on April 7, 2024.  [Doc. 1].  Soon afterwards, and before Plaintiffs served their Original Complaint on Defendants, Plaintiffs filed their First Amended Complaint in which they corrected their case caption.  [Doc. 4]; see also [Doc. 12, pp. 1–2 n.1].

[4] Count I is alleged on behalf of "Plaintiff," who is presumably Rice, given that this count concerns force used during Rice's arrest.  See [Doc. 12, pp. 10–14].  However, Count II is alleged on behalf of "Plaintiffs."  Id. at 14.  In his Motion to Dismiss, Sheriff Tinsley points out that he "assumes [this] to be a typo as the count . . . makes no reference to Plaintiff Jackson."  [Doc. 18-1, p. 2 n.1].  The Court agrees with Sheriff Tinsley.  It appears that both Counts I and II are alleged only on behalf of Rice because both counts concern conduct that occurred during the arrest and neither count mentions any interaction between Sheriff Tinsley and Jackson.  See [Doc. 12, pp. 10–15].  Accordingly, the Court will construe any allegations in Counts I and II as alleged solely on behalf of Rice.

[5] The Second Amended Complaint also contains the following claims against Ms. Tinsley in her individual capacity:  unlawful seizure in violation of the Fourth Amendment (Count III); retaliatory arrest in violation of the first amendment and unlawful seizure in violation of the Fourth Amendment (Count IV); assault and battery (Count V); interference with possession of chattel (Count VI); intentional infliction of emotional distress (Count VII); and defamation per se (Count VIII).  It is unclear which of these counts are alleged on behalf of Rice, Jackson or both Plaintiffs.  However, the Court need not determine this issue for purposes of deciding the instant motion.

## LEGAL STANDARD

"At the motion to dismiss stage, all well-pleaded facts are accepted as true, and the reasonable inferences therefrom are construed in the light most favorable to the plaintiff." Bryant v. Avado Brands, Inc., 187 F.3d 1271, 1273 n.1 (11th Cir. 1999). In determining whether this action should be dismissed for failure to state a claim, Federal Rule of Civil Procedure 8(a)(2) provides that a pleading must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Although detailed factual allegations are not necessarily required, the pleading must contain more than "'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007)). Importantly, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Id. (quoting Twombly, 550 U.S. at 570).

## ANALYSIS

In his Motion to Dismiss, Sheriff Tinsley argues that the claims against him are subject to dismissal because: (i) the arrest was supported by probable cause; (ii) he used de minimis force in executing the arrest; (iii) he is entitled to qualified immunity; and (iv) the state law claims against him are not supported under

Georgia law and are barred by the doctrine of official immunity.  [Doc. 18].  The

Court will address each of these arguments in turn.

### A. Count I – the Federal Law Claim[6]

The Court will first address Sheriff Tinsley's arguments concerning Rice's §

1983 claim against him for excessive force in violation of the Fourth Amendment.

---

[6] In his Motion to Dismiss, Sheriff Tinsley correctly points out that Count I references unlawful seizure, [Doc. 12, pp. 16–17], which Sheriff Tinsley construes as a potential false arrest claim, [Doc. 18, p. 5].  The Court finds that, to the extent that Rice does make allegations of false arrest, they fail.  An officer has probable cause to arrest a suspect if "the facts and circumstances within the officer's knowledge, of which he has reasonably trustworthy information, would cause a prudent person to believe, under the circumstances shown, that the suspect has committed, is committing, or is about to commit an offense."  Carter v. Butts County, 821 F.3d 1310, 1319 (11th Cir. 2016) (quoting Kingsland v. City of Miami, 382 F.3d 1220, 1226 (11th Cir. 2004), abrogated on other grounds by Williams v. Aguirre, 965 F.3d 1147, 1159 (11th Cir. 2020)).  Here, Sheriff Tinsley had probable cause to arrest Rice.  Plaintiffs allege that Ms. Tinsley— another law enforcement officer—informed Sheriff Tinsley that a crime had been committed against her in the form of sexual battery.  [Doc. 12, p. 5].  Based on this information, Sheriff Tinsley executed the arrest of Rice, the suspect whom Ms. Tinsley identified.  Id.  Regardless of the veracity of the information at the time of the arrest, Sheriff Tinsley had no reason to believe that Ms. Tinsley's report was untruthful.  Based on Ms. Tinsley's report of sexual battery, the Court finds that Sheriff Tinsley had "reasonably trustworthy information . . . to believe, under the circumstances shown, that the suspect . . . committed . . . an offense" at the time of the arrest.  See Carter, 821 F.3d at 1319.  Accordingly, Sheriff Tinsley had probable cause to arrest Rice and, to the extent that Sheriff Tinsley's Motion seeks dismissal of a § 1983 false arrest claim against him, the Motion is **GRANTED**.

**1. Whether Sheriff Tinsley used excessive force.**

In Count I, Rice alleges that Sheriff Tinsley violated his Fourth Amendment rights by using excessive force to execute the arrest.  [Doc. 12].  The Fourth Amendment protects an individual's "right to be free from the use of excessive force in the course of an arrest."  <u>Vinyard v. Wilson</u>, 311 F.3d 1340, 1347 (11th Cir. 2002), <u>overruled in part on other grounds by</u> <u>Pearson v. Callahan</u>, 555 U.S. 223 (2009); <u>see also</u> <u>Graham v. Connor</u>, 490 U.S. 386, 388 (1989) (holding that the Fourth Amendment governs "a free citizen's claim that law enforcement officials used excessive force in the course of making an arrest, investigatory stop, or other 'seizure' of his person").

In his Motion to Dismiss, Sheriff Tinsley argues that the excessive force claim must be dismissed because the force he employed during the arrest was de minimis and, therefore, lawful.  [Doc. 18, pp. 6–8].  Specifically, Sheriff Tinsley argues that, at the time he arrested Rice, "two unidentified bystanders" were approaching them and Jackson was also in the vicinity, meaning that "the scene was entirely unsecured," despite Plaintiffs' allegation that Rice was already in

handcuffs when Sheriff Tinsley forced him to the ground.[7]  Id. at 7–8.  In response, Rice argues that Sheriff Tinsley violated his Fourth Amendment rights and is not entitled to qualified immunity because Sheriff Tinsley employed unlawful, excessive force to execute the arrest.  See [Doc. 20, pp. 5–6].  In particular, Rice argues that the force Sheriff Tinsley used was not de minimis because Rice was already in handcuffs when Sheriff Tinsley forced him to the ground.  Id.

The Eleventh Circuit Court of Appeals has held that "a minimal amount of force and injury . . . will not defeat an officer's qualified immunity in an excessive force case."  Nolin v. Isbell, 207 F.3d 1253, 1258 (11th Cir. 2000).  "Whether a specific use of force is excessive turns on factors such as the severity of the crime, whether the suspect poses an immediate threat, and whether the suspect is resisting or fleeing."  Post v. City of Fort Lauderdale, 7 F.3d 1552, 1559 (11th Cir. 1993) (citing Graham, 490 U.S. at 394).  Moreover, courts in this circuit consider "the relationship between the need and amount of force used" and "the extent of the injury inflicted" as important factors in an excessive force determination.  Vinyard, 311 F.3d at 1347.

---

[7] Sheriff Tinsley argues that the QT Footage "does not actually show that Rice was handcuffed" but, nevertheless, Sheriff Tinsley acknowledges that "at this stage, Rice's allegation to that effect must be credited."  [Doc. 18-1, p. 7].

"Fourth Amendment jurisprudence has long recognized that the right to make an arrest or investigatory stop necessarily carries with it the right to use some degree of physical coercion or threat thereof to effect it." Graham, 490 U.S. at 396. Further, the Eleventh Circuit has observed that "[n]ot every push or shove, even if it may later seem unnecessary in the peace of a judge's chambers, violates the Fourth Amendment." Id. However, the appellate court "has repeatedly found it clearly established under the Fourth Amendment 'that officers may not use excessive force against a non-resisting suspect who has already been subdued.'" Cendan v. Trujillo, 779 F. App'x 688, 690 (11th Cir. 2019) (quoting Reese v. Herbert, 527 F.3d 1253, 1274 n.33 (11th Cir. 2008)). In fact, the Eleventh Circuit clarified "that where a detainee is not resisting arrest, gratuitous use of force—even a single punch—is excessive." Quinette v. Reed, 805 F. App'x 696, 705 (11th Cir. 2020).

Here, according to the allegations in the Operative Complaint, Rice was already secured in handcuffs and not resisting arrest when Sheriff Tinsley "body slammed" him to the ground, causing him to lose consciousness. [Doc. 12, p. 5]. On these facts, Sheriff Tinsley's use of force was not necessary to the situation at hand. See Saunders v. Duke, 766 F.3d 1262, 1269 (11th Cir. 2014). The Court notes that the instant case stands in contrast with cases in which officers use force

upon suspects who are yet to be handcuffed and are resisting arrest.  For instance, in Johnson v. City of Atlanta, the Eleventh Circuit upheld the district court's grant of qualified immunity to an officer who executed a takedown after the suspect "repeatedly refused to put both hands behind his back and pulled his hands away multiple times."  107 F.4th 1292, 1296, 1303 (11th Cir. 2024); see also Charles v. Johnson, 18 F.4th 686, 692, 700 (11th Cir. 2021) (concluding there was no excessive force where an officer tackled a suspect who was actively resisting as the officer was attempting to handcuff him); Durruthy v. Pastor, 351 F.3d 1080, 1093–95 (11th Cir. 2003) (determining an officer did not use excessive force where the officer forced an unrestrained suspect to the ground so that the officer could handcuff the suspect).

The Court finds that Sheriff Tinsley's takedown of Rice aligns with the grouping of cases involving non-resisting, handcuffed suspects.  By way of example, in Lee v. Ferraro, the appellate court found that an officer used excessive force where the officer "slammed" a suspect's head against the trunk of her car after she was already handcuffed and not resisting arrest.  284 F.3d 1188, 1191, 1198 (11th Cir. 2002), overruled in part on other grounds by Pearson, 555 U.S. at 223; see also Slicker v. Jackson, 215 F.3d 1225 (11th Cir. 2000) (finding excessive force where an officer slammed a suspect's head to the pavement and kicked the

suspect in the head, leg and back after the suspect was secured in handcuffs);

Turner v. Martin, 521 F. Supp. 3d 1310, 1321–22 (S.D. Ga. 2021) (determining

that an officer used excessive force where the officer hit a suspect in the face after

the suspect was already in handcuffs and under the officer's control). This Court

concludes that that the facts alleged in the Operative Complaint—that Sheriff

Tinsley "body slammed" Rice to the ground after Rice was already handcuffed and

not resisting arrest—fall into the latter grouping of cases, thus supporting a finding

that Sheriff Tinsley used excessive force to execute the arrest.

Application of the Graham factors also suggests that Sheriff Tinsley's use of

force was excessive. The first Graham factor admittedly weighs in favor of the

application of qualified immunity, given that the alleged crime at issue here was a

serious offense—sexual battery. Vinyard, 311 F.3d at 1347. However, this factor

alone is not determinative. See Saunders v. Duke, 766 F.3d 1262, 1268 (11th Cir.

2014) (refusing to apply qualified immunity to an officer's actions, even though

the suspect's underlying offense was the unlawful distribution of drugs, where the

officer "slammed" an unresisting suspect against the pavement with "extreme

force"); see also Johnson, 107 F.4th at 1302 (noting that "[a] court must look at the

'totality of the circumstances' in making" an assessment as to excessive force

(quoting Tennessee v. Garner, 471 U.S. 1, 9 (1985)). Moreover, the second two

Graham factors weigh against the application of qualified immunity.  There was no indication that Rice posed an "immediate threat" to Sheriff Tinsley's safety or that he was attempting to flee.  See Stephens v. DeGiovanni, 852 F.3d 1298, 1321–22 (11th Cir. 2017).  Rather, Plaintiffs allege that "[a]t no time did Mr. Rice resist [Sheriff] Tinsley['s] attempt to arrest him while his hands were cuffed behind his back prior to being body slammed to the ground by Mr. Tinsley."  [Doc. 12, pp. 5–6].

Although Sheriff Tinsley argues that his use of force was de minimis, the Eleventh Circuit has held that the de minimis force "principle has never been used to immunize officers who use excessive and gratuitous force after a suspect has been subdued, is not resisting, and poses no threat."  Saunders, 766 F.3d at 1269–70.  As such, the Court finds that Sherriff Tinsley's de minimis force argument is inapplicable here.  See Rebalko v. City of Coral Springs, 552 F. Supp. 3d 1285, 1316–17 (S.D. Fla. 2020) (finding that the de minimis force doctrine did not apply where an officer used gratuitous force on a detainee who was not resisting arrest and who did not otherwise pose a threat to the officer's safety).

Sheriff Tinsley also argues that the presence of two unidentified bystanders at the scene during the arrest renders his use of force reasonably necessary.  [Doc. 18, pp. 7–8].  While the Court recognizes that this is one factor in the totality of

circumstances that it must consider, the Court nevertheless finds that the presence of these bystanders fails to justify Sheriff Tinsley's use of gratuitous force against a non-resisting, handcuffed suspect.  See Hadley v. Gutierrez, 526 F.3d 1324, 1333–34 (11th Cir. 2008) (upholding a district court's denial of qualified immunity at the summary judgment stage where an officer arrested a suspect in a grocery store and, although the suspect was not resisting arrest, punched him in the stomach and face until he lost consciousness); Quinette, 805 F. App'x at 699, 707 (upholding a district court's denial of qualified immunity to a prison official who pushed a non-resisting inmate without provocation).

### 2. Whether Sheriff Tinsley is entitled to qualified immunity as to the excessive force claim.

Since the Court finds that Sheriff Tinsley used excessive force against Rice in executing the arrest, the Court now considers Sheriff Tinsley's argument that he is shielded from liability under the doctrine of qualified immunity. [8]  The defense of qualified immunity is ordinarily addressed at the summary judgment stage of a

---

[8] The section heading for this argument reads, "[h]ad he been sued in his individual capacity, Sheriff Tinsley would be entitled to qualified immunity."  [Doc. 18-1, p. 9].  The Court believes this heading to be in error, given that Plaintiffs clarified in their Operative Complaint that the claims against Sheriff Tinsley are "in his individual capacity."  [Doc. 12, p. 4].  As such, the Court will disregard this notation and construe the argument simply as one for qualified immunity based on Plaintiffs' allegations as stated in the Operative Complaint.

case.  Chesser v. Sparks, 248 F.3d 1117, 1121 (11th Cir. 2001).  Nevertheless, the Eleventh Circuit has held that it may be raised and considered earlier.  St. George v. Pinellas County, 285 F.3d 1334, 1337 (11th Cir. 2002).  In fact, "[b]ecause qualified immunity is a defense not only from liability, but also from suit, it is important for a court to ascertain the validity of a qualified immunity defense as early in the lawsuit as possible."  Paez v. Mulvey, 915 F.3d 1276, 1284 (11th Cir. 2019) (quoting Lee, 284 F.3d at 1194).

As a general principle, "[q]ualified immunity protects public officers 'from undue interference with their duties and from potentially disabling threats of liability.'"  Id. (quoting Harlow v. Fitzgerald, 457 U.S. 800, 806 (1982)).  Indeed, "[t]he qualified immunity defense shields 'government officials performing discretionary functions . . . from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'"  Corbitt v. Vickers, 929 F.3d 1304, 1311 (11th Cir. 2019) (quoting Harlow, 457 U.S. at 818).  Qualified immunity "balances two important public interests:  'the need to hold public officials accountable when they exercise power irresponsibly and the need to shield officials from harassment, distraction, and liability when they perform their duties reasonably.'"  Id. (quoting Pearson, 555 U.S. at 231).  Qualified immunity protects "all but the plainly

incompetent or those who knowingly violate the law." Id. (quoting Malley v. Briggs, 475 U.S. 335, 341 (1986)).

"In order to establish qualified immunity, a defendant must first show that [he] was acting within the scope of [his] discretionary authority at the time of the alleged misconduct." Paez, 915 F.3d at 1284. Here, it is apparent to the Court— and the parties do not dispute—that Sheriff Tinsley was acting within the scope of his discretionary authority when arresting Rice. See Johnson, 107 F.4th at 1301 ("It is well established that an arrest of someone suspected of violating the law is within the discretionary authority of a police officer."). Therefore, "the burden shifts to the plaintiff to show that qualified immunity is not appropriate." Paez, 915 F.3d at 1284.

An arresting officer is entitled to qualified immunity unless the plaintiff shows that: (1) the defendant violated a constitutional right; and (2) the violated right was clearly established at the time of the incident. Id. In other words, "[t]o defeat a qualified immunity defense on a motion to dismiss, the operative complaint must plausibly plead that the defendant violated the plaintiff's federal rights and those rights were clearly established." Jackson v. City of Atlanta, 97 F.4th 1343, 1350 (11th Cir. 2024). Importantly, "[b]oth elements of this test must be present for an official to lose qualified immunity." Rivera v. Carvajal, 777 F.

App'x 434, 437 (11th Cir. 2019) (quoting Brown v. City of Huntsville, 608 F.3d

724, 734 (11th Cir. 2010)).  Moreover, courts are "permitted to exercise their

sound discretion in deciding which of the two prongs of the qualified immunity

analysis should be addressed first in light of the circumstances in the particular

case at hand."  Pearson, 555 U.S. at 236.

Rice argues that Sheriff Tinsley is not entitled to qualified immunity because

the force that Sheriff Tinsley used against him was not de minimis in nature.  [Doc.

12, pp. 5–6].  To support this argument, Rice points to the QT Footage.  Id. at 6.

Rice contends that QT Footage shows that he "was in handcuffs at the time force

was used against him by [Sheriff] Tinsley" and he argues that any ambiguities in

the QT Footage must be construed in his favor.  Id.  In the Operative Complaint,

Rice also alleges that he had a "clearly established Constitutional right under the

Fourth Amendment to bodily integrity and to be free from excessive force by law

enforcement" and that Sheriff Tinsley's use of force "shocks the conscience and

violated [his] . . . Fourth Amendment rights."  [Doc. 12, pp. 11–12].

Even though the Court concludes above that Sheriff Tinsley violated Rice's

constitutional right to be free from excessive force, Sheriff Tinsley is still entitled

to the protection of qualified immunity unless the Court determines that the

constitutional right was clearly established at the time of the violation.  Paez, 915

F.3d at 1284.  In this circuit, a right can be deemed clearly established in one of

three ways:

> (1) case law with indistinguishable facts clearly establishing the
> constitutional right; (2) a broad statement of principle within the
> Constitution, statute, or case law that clearly establishes a
> constitutional right; or (3) conduct so egregious that a constitutional
> right was clearly violated, even in the total absence of case law.

Hill v. Cundiff, 797 F.3d 948, 979 (11th Cir. 2015) (quoting Lewis v. City of West

Palm Beach, 561 F.3d 1288, 1291–92 (11th Cir. 2009)).  However, "[f]or an

excessive force violation, the analysis is necessarily fact-specific; prior cases need

not involve mirror-image factual circumstances to clearly establish that force was

excessive." Quinette, 805 F. App'x at 704.

Here, the Court finds that Sheriff Tinsley violated Rice's clearly established

constitutional rights when he "body slammed" Rice on the ground after Rice was

already secured in handcuffs.  [Doc. 12, p. 5].  Specifically, the Court deems it

clearly established that an officer cannot use gratuitous force on a non-resisting,

handcuffed arrestee.  See, e.g., Hadley, 526 F.3d at 1333 ("We hold that a

handcuffed, non-resisting defendant's right to be free from excessive force was

clearly established in February 2002." (citing Lee, 284 F.3d 1188)); Saunders, 766

F.3d at 1268–69 (finding violation of a clearly established constitutional right

where an arrestee was handcuffed on the ground and, after lifting his head from hot

pavement, officers "slammed" his face into the pavement "with extreme force");

Lee, 284 F.3d at 1291, 1198 (finding a violation of a clearly established right

where an officer "slammed" an arrestee's head against the hood of her car, though

she was already in handcuffs and not resisting arrest).

Accordingly, the Court finds that Sheriff Tinsley is not entitled to qualified

immunity as to Rice's excessive force claim.  Therefore, to the extent that Sheriff

Tinsley's Motion to Dismiss argues for the dismissal of Rice's § 1983 excessive

force claim, the Motion is **DENIED**.

## B. Count II – the State Law Claims

In addition to his excessive force claim, Rice also alleges state law claims

against Sheriff Tinsley for assault and battery.  [Doc. 12].  Sheriff Tinsley argues

that Rice's state law claims fail because:  (1) force that is found non-excessive

under the Fourth Amendment cannot give rise to claims for assault and battery

under Georgia law; and (2) he is entitled to official immunity for his actions

relating to the arrest, and therefore cannot be found liable for Rice's state law

claims.  [Doc. 18-1, pp. 11–15].  Plaintiffs argue that Sheriff Tinsley used

excessive force in arresting Rice and that Sheriff Tinsley is not entitled to official

immunity because he acted with actual malice in executing the arrest.  [Doc. 20,

pp. 6–8].

**1. Whether the allegations in the Operative Complaint fail to give rise to claims for assault and battery under Georgia law.**

Sheriff Tinsley argues that Rice's state law claims for assault and battery must fail because "[f]orce that is not excessive under the Fourth Amendment does not give rise to a claim for assault or battery under Georgia law." [Doc. 18-1, p. 11] (citing Haile v. Pittman, 389 S.E.2d 564, 566 (Ga. Ct. App. 1989)). However, as explained above, the Court finds that Rice sufficiently alleged a claim for excessive force against Sheriff Tinsley in violation of Rice's Fourth Amendment rights. As such, Sheriff Tinsley's argument that Rice's state law claims must be dismissed because no excessive force occurred is unpersuasive.

**2. Whether Sheriff Tinsley is entitled to official immunity.**

Under Georgia law, "[t]the doctrine of official immunity offers public officers and employees limited protection from suit in their personal capacities." Shultz v. Lowe, 874 S.E.2d 842, 845 (Ga. Ct. App. 2022) (quoting Wilson v. Cromer, 847 S.E.2d 213, 216 (Ga. Ct. App. 2020)). However, official immunity is not available to employees and officials who negligently perform their ministerial functions or those who act with "actual malice or with actual intent to cause injury in the performance of their official functions." Ga. Const. art. I, § II, para IX(d); see also Gates v. Khokhar, 884 F.3d 1290, 1304 (11th Cir. 2018) (noting that official immunity "protects an officer from personal liability arising from his

performance of 'official functions' as long as the officer did not act with 'actual malice' or 'actual intent to cause injury'").  It is undisputed here that Sheriff Tinsley was performing discretionary functions during the arrest.  See Common Cause/Georgia v. City of Atlanta, 614 S.E.2d 761, 764 (Ga. 2005) ("Generally, a discretionary act is one that requires the examination of facts and the exercise of considered judgment before deciding on a course of action . . . .").  As such, unless Rice sufficiently alleges that Sheriff Tinsley was acting with actual malice, his assault and battery claims must fail because Sheriff Tinsley is protected under the doctrine of official immunity.

"Actual malice is a demanding standard:  it requires an officer to act with 'a deliberate intention to do a wrongful act.'"  Black v. Wigington, 811 F.3d 1259, 1266 (11th Cir. 2016) (quoting Adams v. Hazelwood, 520 S.E.2d 896, 898 (Ga. 1999)).  "'Intent to injure' is also a high bar.  It requires 'an actual intent to cause harm to the plaintiff, not merely an intent to do the act purportedly resulting in the claimed injury.'"  Yancey v. Tillman, 696 F. Supp. 3d 1310, 1322 (N.D. Ga. Sept. 29, 2023) (internal citation omitted) (quoting Kidd v. Coates, 518 S.E.2d 124, 125 (Ga. 1999)).

Here, the Court finds that Rice has sufficiently alleged actual malice. Specifically, Rice alleges numerous times through the Operative Complaint that

Sheriff Tinsley acted maliciously and with an "intent to harm" him.  [Doc. 12, pp. 12, 15].  Rice further asserts that Sheriff Tinsley arrested him immediately after hearing a report from Ms. Tinsley—Sheriff Tinsley's wife—that Rice had touched her in an inappropriate manner.  Id. at 5.  Rice claims that Sheriff Tinsley "body slammed" him, even though Rice already had his hands "cuffed behind his back," was not resisting arrest and did not attempt to flee.  Id. at 5–6.

At the motion to dismiss stage, the Court finds that Rice sufficiently alleged that Sheriff Tinsley acted with actual malice in "body slamming" him to the ground after he was already handcuffed.  Moreover, although Sheriff Tinsley may not have intended to knock Rice unconscious during the takedown, "the unexpected extent of [Rice's] injury does not neutralize, let along immunize, [Sheriff Tinsley's] initial misconduct."  Quinette, 805 F. App'x at 707 (affirming a district court's denial of official immunity at the motion to dismiss stage and noting that, "[u]nder Georgia law, a 'factfinder may infer from evidence that a defendant acted with actual malice.'" (quoting Lagroon v. Lawson, 759 S.E.2d 878, 883 ( Ga. Ct. App. 2014)); see also Brown v. Fluellen, 564 F. Supp. 3d 1308, 1316 (N.D. Ga. Sept. 29, 2021) (finding actual malice where a plaintiff alleged that:  (i) he did not pose a threat to anyone during the incident; (ii) the defendant

intentionally used force against him although he was handcuffed; and (iii) the use of force caused him to suffer injuries).

## CONCLUSION

For the foregoing reasons, to the extent that Sheriff Tinsley's Motion to Dismiss seeks dismissal of the excessive force claim and state law assault and battery claims against him, the Motion [Doc. 18] is **DENIED**.[9]

The parties are **HEREBY ORDERED** to file a Joint Preliminary Report and Discovery Plan, as required under Local Rule 16.2, no later than fourteen days from the date of this order.  The parties are notified that a failure to comply with this Order may result in sanctions, including dismissal.  In the event that the parties fail to file a Joint Preliminary Report and Discovery Plan, the Clerk is **DIRECTED** to submit the case at the expiration of the applicable time period.

**SO ORDERED** this 13th day of February, 2025.

_____
**J. P. BOULEE**
United States District Judge

---

[9] However, as discussed above, to the extent that the Operative Complaint contains a false arrest claim, Sheriff Tinsley's Motion is **GRANTED**.